# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

NITZA ANGELA PEREZ,

        Plaintiff,

v.                                          Case No:   6:20-cv-1470-LRH

COMMISSIONER OF SOCIAL
SECURITY

        Defendant.

---

## MEMORANDUM OF DECISION[1]

    Nitza Angela Perez ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Claimant raises one argument challenging the Commissioner's final decision, and, based on that argument, requests that the matter be reversed and remanded for further administrative proceedings. (Doc. 27, at 12, 39). The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed. (*Id.*, at 39). For the reasons

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Docs. 26, 30-31.

discussed herein, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   PROCEDURAL HISTORY.

On January 16, 2018, Claimant filed applications for DIB and SSI, alleging that she became disabled on April 11, 2017.   (R. 204, 211, 217).[2]   Her claims were denied initially and on reconsideration, and she requested a hearing before an ALJ. (R. 122-27; 128-29; 130-41).   A hearing was held before the ALJ on August 5, 2019, at which Claimant was represented by an attorney.   (R. 35-57).   Claimant and a vocational expert ("VE") testified at the hearing.   (*Id.*).   Following the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.   (R. 14–34).   Claimant sought review of the ALJ's decision by the Appeals Council.   *See* R. 4-5.   On June 10, 2020, the Appeals Council denied the request for review.   (R. 1–5).   Claimant now seeks review of the final decision of the Commissioner by this Court.   (Doc. 1).

---

[2] The Joint Memorandum and the ALJ's decision state that Claimant filed her applications for benefits on January 25, 2018.   *See* Doc. 27, at 1, 13; R. 17.   However, the applications themselves are dated January 16, 2018.   (R. 211, 217).

## II.     THE ALJ'S DECISION.[3]

After considering the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a).   (R. 19-28).[4] The ALJ first found that Claimant meets the insured status requirements of the Social Security Act through December 31, 2022.   (R. 19).   The ALJ concluded that Claimant had not engaged in substantial gainful activity since April 11, 2017, her alleged onset date.   (*Id.*).

The ALJ then found that Claimant suffered from the following severe impairments:   degenerative disc disease, carpal tunnel syndrome, chronic obstructive pulmonary disease ("COPD"), obesity, fibromyalgia, cervical dystonia, depression, and anxiety.   (*Id.*).   The ALJ also found that Claimant has gastroesophageal reflux disease ("GERD"), but that it is a non-severe impairment. (R. 19-20).   The ALJ concluded that Claimant did not have an impairment or

---

[3] Upon a review of the record, the Court finds that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   (Doc. 27).   Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference and only restates them herein as relevant to considering the issues raised by Claimant.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy.   *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (R. 20).

After careful consideration of the entire record, the ALJ determined that Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in the Social Security regulations,[5] except:

> frequently reaching in all directions bilaterally.  [Claimant] can frequently handle and finger bilaterally.  The claimant can climb ramps and stairs frequently, climb ladders and ropes, or scaffolds occasionally.  The claimant can frequently balance, stoop, kneel, crouch, and crawl.  The claimant can work at unprotected heights occasionally, moving mechanical parts occasionally, in extreme cold occasionally, in extreme heat occasionally, in vibration occasionally. The claimant is able to perform simple, routine tasks, and she [is] able to perform simple work-related decisions.  The claimant is able to interact with supervisors and co-workers frequently and she can interact with the public occasionally.

(R. 22).

Based on this assessment, the ALJ concluded that Claimant was not capable of performing past relevant work, which included work as a mail clerk, dental

---

[5] The social security regulations define sedentary work to include:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).   The ALJ referenced in his decision §§ 404.1567(b) and 416.967(b), both of which define "light work."   (R. 22).   The Court believes this to be a scrivener's error, as both the ALJ and the parties repeatedly reference and consider only sedentary work.   *See, e.g.,* R. 26-28; Doc. 27, at 12.

assistant, receptionist, and file clerk.   (R. 26).   However, the ALJ found that, considering Claimant's age, education, work experience, and residual functional capacity, as well as the testimony of the VE, Claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.   (R. 27).   Specifically, the ALJ found that Claimant would be able to perform the requirements of representative occupations such as: telephone clerk, doc preparer, and call out operator.   (R. 27-28).   Accordingly, the ALJ concluded that Claimant was not under a disability, as defined by the Social Security Act, from her alleged disability onset date through the date of decision. (R. 28).

## III.   STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla

and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

In the Joint Memorandum, which the Court has reviewed, Claimant raises only one assignment of error: that the ALJ erred in his consideration of the joint opinion of Claimant's treating psychiatric providers, Dr. Naomi Jones, Ph.D., Christine Forge, APRN, and Dr. Ramon O. Martinez, M.D.   (Doc. 27, at 12-24). Accordingly, this is the only issue the Court will address.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440.   In

determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Claimant filed her applications for DIB and SSI on January 16, 2018.   (R. 211, 217).   Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings.  We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.   When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.   The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).   We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. §§ 404.1520c(a), 416.920c(a).   Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors

that tend to support or contradict a medical opinion or prior administrative medical finding.   *Id.* §§ 404.1520c(c), 416.920c(c).

Pursuant to the new regulations, the Commissioner is not required to articulate how she "considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1).   Rather, under the regulations, the most important factors the Commissioner will consider when determining the persuasiveness of medical opinions are supportability and consistency.   *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations state that the Commissioner will explain how she considered the supportability and consistency factors in the determination or decision.   *Id.*   Thus, "[o]ther than articulating [her] consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how [she] considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (quoting *Mudge v. Saul*, No. 4:18CV693CDP, 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019)).   *See also Bolton v. Comm'r of Soc. Sec. Admin.*, No. 6:20-cv-1900-DNF, 2021 WL 5231760, at *7 (M.D. Fla. Nov. 10, 2021) (finding no error where ALJ did not address in the decision any factors other than supportability and consistency) (citing *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020))).

On July 22, 2019, Claimant's treating psychiatric providers, Dr. Naomi Jones, Ph.D., Christine Forge, APRN, and Dr. Ramon O. Martinez, M.D. ("the treating providers") jointly completed and signed a "Mental Impairment Questionnaire" on behalf of Claimant. (R. 776-79). The questionnaire instructed the treating providers to answer a series of questions intended to "determine [the] individual's ability to do work-related activities on a day-to-day basis in a regular work setting." (R. 776) (emphasis in original removed). The treating providers assessed Claimant's functional limitations in numerous categories, and in particular opined that she had "extreme" limitations in her abilities to: maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday or workweek without interruptions from psychologically based symptoms; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. (R. 776-78).

Throughout the questionnaire, the treating providers also noted Claimant's severe anxiety, explaining, for example, that Claimant "is unable to go out into public due to severe anxiety. She stays home and her husband does tasks such as

grocery shopping. The tremors she experiences cause[] social anxiety and prevent[] [Claimant] from attending functions where there are people she does not know." (R. 777). The treating providers indicated that Claimant has had the limitations and restrictions outlined in the questionnaire since January 16, 2019 – the date they began treating her. (R. 779). They opined that Claimant would likely have four or more absences from work in an average month. (R. 777). The entirety of the ALJ's analysis of the questionnaire is as follows:

> I find that the mental health impairment questionnaire completed by Dr. Jones Ph.D., Dr. Ramon Martines [sic], and Christine Forfe [sic] APRN, is not persuasive because it is inconsistent with the mental health records. (Ex. 24F). Status examinations largely show normal functions on insight, decision, she is see [sic] appropriately groomed, and she has no suicidal or homicidal issues. Further, the claimant has never been hospitalized for mental issues-voluntarily or involuntarily. She even has reported to improvement with medication and she has not identified issues with regard to getting along with others. (Ex. 7E).

(R. 25-26).

In sum, the ALJ provided three reasons for discounting the treating providers' opinion: (1) Claimant's mental status examinations were largely normal, (2) Claimant has never been voluntarily or involuntarily hospitalized for mental issues, and (3) Claimant has reported improvement with medication and has not identified issues with regard to getting along with others.

Claimant concedes that the new regulations apply to her claims, and that the two most important factors to consider are consistency and supportability. (Doc.

27, at 13-14).   Nonetheless, Claimant argues generally that the ALJ did not comply with the new regulations because he did not explain why the treating providers' opinion was not consistent with existing medical records or how the opinions were not supported by the records.   (*Id*.).   And while Claimant's argument is not a model of clarity, she appears to challenge the ALJ's evaluation of the treating providers' opinion on four specific grounds: (1) the ALJ failed to specify which records and findings he relied on to support his conclusion that the opinion was inconsistent with mental health records, or explain the purported inconsistency, (2) the ALJ's rationale that Claimant reported improvement in her symptoms with medication is misplaced, (3) the ALJ erroneously found that Claimant has not identified issues in getting along with others, and (4) the ALJ's reliance on the lack of mental health hospitalizations is improper.   (*Id.*, at 14-24).   The Court will address each of these arguments in turn.[6]

---

[6] In the Joint Memorandum, Claimant raises an additional argument with respect to the ALJ's statement that Claimant had a neat appearance and engaged in certain daily activities, and contends that this was an improper rationale for rejecting the opinion of the treating providers. (Doc. 27, at 18; citing R. 25-26).   While the ALJ mentions that Claimant appeared before her treating providers "appropriately groomed," in the context of summarizing examination records, the discussion of Claimant's personal hygiene and daily activities was made in reference to Claimant's subjective testimony.   *See* R. 26.   Claimant has not challenged the ALJ's analysis of her subjective testimony, thus to the extent Claimant seeks to raise that here, such issues have been waived.   *See Persichilli v. Comm'r of Soc. Sec. Admin.*, 246 F. App'x 613, 615 (11th Cir. 2007) (issues not raised before the district court are waived).

First, Claimant argues that the ALJ erred by failing to specify which records and findings he relied on to support his conclusion that the opinion was "inconsistent with the mental health records" or to explain the alleged inconsistencies.  (*Id.*, at 14; citing R. 25).   Claimant argues that while the ALJ did reference status examinations which "largely show normal functions on insight, decision" and show that she was appropriately groomed and displayed no suicidal or homicidal ideation, the ALJ never discussed how this evidence was inconsistent with the treating providers' opinion.  (*Id.*).

The Court agrees with Claimant's first argument.  The ALJ stated, in conclusory fashion, that the treating providers' opinion is inconsistent with the mental health records, but he provided little in the way of support for this conclusion.  Rather, the ALJ stated generally that "[s]tatus examinations largely show normal functions on insight, decision, she is see[n] appropriately groomed, and she has no suicidal or homicidal issues." (*Id.*).   Elsewhere in the decision, the ALJ references a mental status examination from Claimant's treating providers indicating that Claimant's thought process was clear and her insight and judgment were intact, and primary care notes stating that Claimant appeared well-groomed. (R. 24-25).   However, because the ALJ did not discuss these records in relation to the treating providers' opinion or explain how they demonstrate an inconsistency between the opinion and the evidence of record, the ALJ "failed to build the

requisite 'accurate and logical bridge from the evidence to [his] conclusion.'" *Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-01515-RBD-DCI, 2020 WL 1957597, at *4 (M.D. Fla. Apr. 8, 2020), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020) (quoting *Flentroy-Tennant v. Astrue*, 2008 WL 876961, at *8 (M.D. Fla. Mar. 27, 2008)).[7]

And the ALJ's statement that Claimant has no suicidal or homicidal issues is similarly problematic.   Claimant argues that the ALJ failed to explain how her lack of suicidal or homicidal ideations translates into an ability to sustain concentration, persistence or pace, to adapt to changes, or to interact appropriately with others in a work setting, particularly where the treating providers opined that Claimant has, at times, extreme limitations in social interaction stemming from her anxiety in being around others.   (*Id.*, at 19; *see* R. 776-79).    The Court agrees.   The ALJ provided no rationale for his finding that Claimant's lack of homicidal or suicidal issues is inconsistent with the treating providers' opinion, and thus the ALJ has erred.   *See also Castro v. Acting Comm'r of Soc. Sec.*, 783 F. App'x 948, 956 (11th Cir.

---

[7] Further, the Eleventh Circuit has recognized that it is not inconsistent that a person suffering from certain mental health conditions may be capable of demonstrating normal judgment and insight in the controlled setting of a medical clinic.   *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1107 (11th Cir. 2021); *see also Castro v. Acting Comm'r of Soc. Sec.*, 783 F. App'x 948, 956 (11th Cir. 2019) ("Without more, we cannot say that [psychiatrist's] observations of Castro's judgment, insight, thought process, and thought content in a treatment environment absent work stressors were inconsistent with his assessments about the limitations she would face in a day-to-day work environment.").

2019) (noting that "'the work environment is completely different from home or a mental health clinic'") (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000))).[8]

Absent an explanation from the ALJ, the Court cannot say that the ALJ's determination that the opinion is inconsistent with the mental health records is supported by substantial evidence. *See Pierson*, 2020 WL 1957597, at *4 (holding, under both the new and old regulations, that "[c]onclusory statements by the ALJ that an examining physician's opinion is inconsistent with the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. Otherwise, the Court is left to guess at which particular records the ALJ asserts support the ALJ's decision and, in doing so, impermissibly reweigh the evidence.") (internal quotations and citations omitted); *Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review."). *See also Brown v. Comm'r of Soc. Sec.*, No. 6:20-CV-840-GJK, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021) (noting that when evaluating medical opinions under the new regulations, the ALJ must "*explain* his decision, particularly with respect to supportability and consistency") (emphasis in original) (citing *Pierson*, 2020 WL 1957597, at *6)).

---

[8] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

Second, Claimant takes issue with the ALJ's rationale that Claimant reported improvement in her symptoms with medication.    (Doc. 27, at 17-18).   Claimant argues that the ALJ's rationale is misplaced and points to evidence in the record indicating that she continued to struggle with mental health issues despite being treated with medication.   (*Id.*, at 17; citing R. 746, 749, 750, 752, 753).   Specifically, Claimant notes that during several mental status examinations, Claimant reported some improvement in mood stabilization with medication but nonetheless reported being "overly emotional," "weepy at times," and at times continuing to experience panic attacks.   (*Id.*).   Claimant argues that, at best, these mental status examinations indicate that "some days…were better than others," but that the ALJ's reliance on Claimant's "good days" as a basis for discrediting the treating providers' opinion was improper.   (*Id.*, at 17-18).

While the ALJ did not provide a citation to the record in support of his finding in the section of the decision where he discusses the opinion of the treating providers, elsewhere in the decision the ALJ cited to an April 10, 2019 treatment note in which Claimant reported improvement in her mood, depression, and anxiety with medication.   (R. 25; citing R. 750).    However, as explained above, it is not the role of the Court to assume that the ALJ intended to cite this record as support for his conclusion that the treating providers' opinion is inconsistent with the record evidence.  *See, e.g., Pierson*, 2020 WL 1957597, at *4 ("Even if the Court

waded through the ALJ's entire discussion of the medical record in this case (which is contained in a separate section of the decision) and managed to identify those records that both fall within the relevant time period and (in the Court's opinion) appear inconsistent with Dr. Perdomo's 'limited residual functional capacity,' the ALJ never discussed any such records in relation to Dr. Perdomo's opinion."). Accordingly, the Court cannot say that the ALJ's finding on this point is supported by substantial evidence, because to do so would require impermissibly reweighing the evidence. *See Bloodsworth*, 703 F.2d at 1239.   Moreover, as the Eleventh Circuit has noted, occasional references to a claimant with mental health issues as being "stable on medication" are not necessarily inconsistent with a finding of debilitating mental illness, as many mental disorders "are characterized by the unpredictable fluctuation of their symptoms." *Simon*, 7 F.4th at 1106.   Given this, the ALJ's failure to explain how Claimant's reported improvement on medication contradicts the treating providers' opinion is especially problematic. Thus, the Court finds this argument persuasive.

Next, Claimant challenges the ALJ's statement that Claimant "has not identified issues with regard to getting along to others."   (Doc. 27, at 19-20; citing R. 26).   In support of this statement, the ALJ cites to a Function Report completed by Claimant.   (R. 26; citing R. 280-87).   Claimant argues that the ALJ erred in failing to explain how her ability to get along with others translates into an ability

to control her emotions and function in a work setting.   (Doc. 27, at 19-20).

Moreover, Claimant points to evidence in the record, including the Function Report

itself, indicating that Claimant has reported difficulty in getting along with others.

(*Id.*).

The Court agrees with Claimant that the ALJ's finding on this point is not

supported by substantial evidence.   As Claimant points out, in the Function Report

cited by the ALJ, Claimant checked the box for "yes" in answering the question "Do

you have any problems getting along with family, friends, neighbors, or others?"

and thereafter explained that she sometimes does not get along with friends and

family because they "sometimes don't understand my frustration."   (R. 285).   And

in fact, elsewhere in the decision the ALJ contradictorily states that "the claimant

reported    to    difficulty    remembering,    completing    tasks,    concentrating,

understanding, and getting along with others" – citing, in part, the Function Report.

(R. 22-23).   Thus, as the ALJ himself has noted, Claimant in fact has reported

difficulty in getting along with others.   *See* R. 285.   The Court therefore cannot say

that the ALJ's finding is supported by substantial evidence because to attempt to

guess at which records the ALJ may have intended to cite to support this rationale

would require the Court to impermissibly reweigh the evidence.   *See Pierson v.*

2020 WL 1957597, at *4; *Bloodsworth*, 703 F.2d at 1239.

Last, Claimant argues that the ALJ's reasoning that Claimant has never been hospitalized for mental health issue is erroneous.   (R. 25).   Claimant argues generally that the ALJ erred by failing to provide an explanation as to how Claimant's lack of hospitalization for mental health issues is relevant to his determination that Claimant can sustain work activity or how her lack of hospitalization contradicts the opinion of the treating providers.   (*Id.*, at 20-21). Claimant thereafter points to evidence in the record which she contends is consistent with the treating providers' assessment of Claimant's mental health issues, including evidence that in August of 2018, Claimant's anxiety led her to the emergency room with chest pains, fearing that she was having a heart attack.   (*Id.*, at 21-23; citing R. 547).

On review, the Court agrees that the ALJ erred.   Again, the ALJ has not provided an explanation as to how Claimant's lack of voluntary or involuntary hospitalization for her mental health issues is inconsistent with the treating providers' opinions.   *See* R. 25-26.   Further confusing this matter is the record cited by Claimant, which does in fact indicate that Claimant was admitted to the emergency room in part due to anxiety and received a primary discharge diagnosis which included a panic attack.   (R. 547, 553).[9]   Thus, the Court agrees that the ALJ

---

[9] Additionally, the ALJ elsewhere in the decision cited to a record from January 2019 in which Claimant presented to the emergency room with shortness of breath, back pain, and anxiety. (R. 23; citing R. 604).

erred by failing to provide an explanation for this rationale, especially in light of evidence in the record that is potentially contrary to his statement.

It could be that the ALJ intended to indicate that Claimant has never been hospitalized at a mental health facility, but it is not the role of this Court to guess at the ALJ's rationale.  *See Bloodsworth*, 703 F.2d at 1239 ("[The Court] may not… reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]…").   Accordingly, the Court cannot say whether the ALJ's reasoning on this point is supported by substantial evidence.  *See Hanna v. Astrue*, 395 F. App'x at 636 (11th Cir. 2010); *Pierson*, 2020 WL 1957597, at *6.

In sum, the Court agrees with Claimant's arguments and finds that the ALJ's stated reasons for finding the treating providers' opinion unpersuasive are not supported by substantial evidence, and therefore, the Court will reverse and remand the final decision of the Commissioner.[10]

---

[10] The Court has not discussed in any detail the arguments raised by the Commissioner in the Joint Memorandum, and this lack of discussion was deliberate.   Over the 14 pages of argument the Commissioner makes, 12.5 pages are expended discussing the new SSA regulations, and whether prior precedent still applies.  (Doc. 27, at 24-37).   The remaining 1.5 pages is a cursory discussion of the ALJ's analysis of the mental health questionnaire, followed by the Commissioner's conclusion that the ALJ satisfied the new regulations' supportability and consistency factors.   (*Id.*, at 37-38).   Because the Court addresses these factors in detail within this Report, there is no need to address the Commissioner's arguments further.

## V.    CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1.  The Commissioner's final decision is **REVERSED and REMANDED** for

    further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.  The Clerk of Court is **DIRECTED** to enter judgment in favor of Claimant

    and against the Commissioner, and thereafter, to **CLOSE** the case.


**DONE** and **ORDERED** in Orlando, Florida on January 21, 2022.


LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record